## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LETY RAMIREZ, on behalf of herself
and all others similarly situated,**

        **Plaintiff,**

        **v.**                         **Case No.  07-2173-JWL**

**MIDWEST AIRLINES, INC.,**

        **Defendant.**

_____

## MEMORANDUM AND ORDER

The Fair and Accurate Credit Transactions Act of 2003 (FACTA) amended the Fair Credit Reporting Act (FCRA) to, among other things, include the following truncation requirement: "[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g).  Plaintiff Lety Ramirez filed this putative class action lawsuit alleging that defendant Midwest Airlines, Inc. violated this statute by giving her a receipt that included her credit card's expiration date.  She seeks statutory damages, punitive damages, costs, and attorneys fees as permitted for a consumer to recover for a willful violation of FCRA.  *Id.* § 1681n.  This matter is currently before the court on Midwest's motions for judgment on the

pleadings or, alternatively, summary judgment (docs. # 18 & #20).[1]  As explained below, the

court finds Midwest's arguments to be without merit, and therefore both motions are denied.

## STATEMENT OF MATERIAL FACTS

Midwest has styled its motions as ones for judgment on the pleadings or, alternatively,

for summary judgment.  In support of the motions, it relies on affidavits and other materials

attached to the motions.  And, in response to Midwest's motions, plaintiff relies on similar

types of materials.  It would be improper for the court to consider materials outside the

complaint in resolving a motion for judgment on the pleadings. *See Park Univ. Enters., Inc.*

*v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (Rule 12(c) motion for judgment on

the pleadings is analyzed using standard for Rule 12(b)(6) motion to dismiss); *Burnham v.*

*Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (court must

convert a motion to dismiss into one for summary judgment if it relies on materials from

outside the complaint).  Consequently, Midwest's motions are more properly viewed as ones

for summary judgment and the court will construe them as such.  Consistent with the well

established standard for evaluating a motion for summary judgment, then, the following facts

---

[1] Midwest's third motion for summary judgment (doc. #22) and plaintiff's motion to stay the response deadline (doc. #34) are denied as moot in light of the stipulation (doc. #56) filed on March 7, 2008.  Plaintiff's motion for oral argument (doc. #53) is denied, as the court does not believe that oral argument would be of material assistance in resolving the motions.

are either uncontroverted or stated in the light most favorable to plaintiff, the nonmoving party.

On November 1, 2006, Midwest entered into a software license and services agreement with ABANCO International LLC relating to the use of ABANCO credit card processing software and hardware for consumer in-flight purchases on Midwest's flights. On or after December 4, 2006, Midwest began using handheld devices provided by ABANCO to process credit card transactions for in-flight purchases of meals, drinks, and other items. Midwest used the devices on twenty-six test flights that month. As of January 1, 2007, Midwest began accepting credit cards on flights other than test flights.

At some time after December 4, 2006, plaintiff made an on-board, in-flight purchase on one of Midwest's airplanes using her credit card. It is undisputed that the receipt she was given contained the last four digits of her credit card number as well as her card's expiration date. She filed this lawsuit on April 27, 2007, alleging that the inclusion of the card's expiration date on the receipt violated FACTA.[2] Midwest's registered agent received the complaint on May 10, 2007. On May 25, 2007, Midwest notified ABANCO and an action plan was established to fix the information printed on the receipts. As of June 7, 2007, the

---

[2] Actually, her complaint alleges that Midwest printed "more than the last five digits of the card number and/or the expiration date on receipts." Complaint (doc. #1), ¶ 3, at 2. It is undisputed, however, that the receipt contained only the last four digits of plaintiff's card number. Consequently, the only potential violation of FACTA currently at issue is Midwest's inclusion of the card's expiration date on her receipt.

ABANCO systems were updated so that they no longer print the credit or debit card expiration dates on any receipts provided to customers.

Midwest's first motion for summary judgment is based on what it contends is a lack of harm to Ms. Ramirez.[3]  In support of this motion, Midwest has submitted a declaration from Mari J. Frank, who is purportedly qualified to testify as an expert concerning privacy and identity theft issues.  Ms. Frank states that the printing of the credit card expiration number on receipts does not foster credit card fraud or identity theft.  Her rationale is that truncating the credit card number on the receipt by masking all but the last four digits of the card number is sufficient to thwart an imposter from making a fraudulent purchase because the complete account number must be input for a credit or debit card transaction to process at all.  She further explains that the critical information needed to process a card in a card-not-present transaction is the complete credit card number in addition to the cardholder's address, zip code, and security code, which is the three-digit code number on the back of the card, not the expiration date.

In response to Ms. Frank's assertions, plaintiff has submitted a declaration from Patrick Faith, the Vice President of Encryption and Authentication Processing for Visa U.S.A. Inc.  Mr. Faith states that "[t]he primary purpose of the expiration date on a Visa card is fraud detection and prevention."  Faith Decl. ¶ 2, at 1.  Mr. Faith further explains that Visa

---

[3] There is no suggestion in the record that Ms. Ramirez is now or has at any time since her purchase on board the Midwest flight been the victim of credit card fraud or identity theft.

4

publishes *Rules for Visa Merchants: Card Acceptance and Chargeback Management Guidelines* that is a comprehensive manual for all United States merchants that accept Visa transactions.  In those *Rules*, Visa discusses its fraud prevention policies, guidelines, and services for card-not-present merchants.  The *Rules* suggest that a card-not-present merchant ask the cardholder for the card expiration date and that the merchant include that information in the transaction authorization request.  Mr. Faith explains in more detail as follows:

> Including the expiration date helps to verify that the card and transaction are legitimate.  A mail, telephone or internet order containing an invalid or missing expiration date may indicate counterfeit or other unauthorized use.  If the merchant elects not to obtain the card expiration date and include that information in the transaction authorization request, the merchant is increasing its exposure to fraud and potentially to liability from chargebacks.
>
> 7.  Card-not-present merchants may also elect to take advantage of Visa's Card Verification Value 2 ("CVV2") validation as part of the authorization request.  The CVV2 is a three-digit security number printed on the back of Visa payment cards to help validate that a merchant's customer is in possession of a legitimate card at the time of the order.  To obtain CVV2 validation as part of the authorization request, the merchant needs to request from the cardholder and submit as part of the authorization request, the CVV2 number from the back of the Visa payment card, the card expiration date, and the card number.  If the expiration date obtained from the customer is incorrect, the CVV2 result code would show N for "No Match."  A "No Match" response is a sign of potential fraud, which the merchant should take into account along with the authorization response and any other verification data.

*Id.* ¶¶ 6-7, at 2-3.

Based on this factual background, Midwest has filed two motions in which it argues that it is entitled to summary judgment on plaintiff's claim.  Therein, Midwest raises essentially two categories of arguments.  In the first motion, Midwest argues that Ms. Frank's declaration establishes that the fact that plaintiff's receipt contained four digits of her credit

card number and the card's expiration date did not and could not have placed her or anyone else at risk of being the victim of fraud or identity theft and, consequently, (1) plaintiff cannot show the "injury-in-fact" required for Article III standing; (2) plaintiff is not eligible for the windfall of statutory damages she seeks pursuant to § 1681n(a)(1)(A); and (3) an award of any such damages would violate principles of Due Process. In the second motion, Midwest argues that even if the receipt violated § 1681c(g), (1) Midwest cannot be held to have "willfully" violated that statute because the alleged violation conforms to an interpretation of the statute that has a foundation in the statutory text, and (2) the statute is unconstitutionally vague and ambiguous on its face.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could

resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

<strong>DISCUSSION</strong>

For the reasons explained below, the court finds each and every one of Midwest's arguments to be without merit.  Plaintiff has Article III standing to bring her claim by virtue of the fact that she suffered a concrete injury-in-fact when Midwest violated her legal right under FACTA to receive a receipt that omitted her credit card expiration date and, in doing so, subjected her to an increased risk of credit card fraud.  Midwest's argument that she is not permitted to recover statutory damages in the absence of a showing of actual damages is unsupported by the unambiguous language of § 1681n.  And, Midwest's due process argument is premature.  Finally, Midwest's attempt to find ambiguity in § 1681c(g), a statute which is anything but ambiguous, is wholly unpersuasive.

## I.    <u>First Motion Based on Plantiff's Asserted Lack of Injury</u>

The factual basis for Midwest's first motion is its contention that plaintiff suffered no actual injury.  In support of this argument, it has submitted Ms. Frank's declaration to the effect that the printing of credit card expiration numbers on receipts does not foster credit card fraud or identity theft.  Midwest contends that, because of this fact (1) plaintiff lacks

8

Article III standing, (2) she is not permitted to recover damages under § 1681n, and (3) an award of statutory damages would violate due process.

     *A.*     *Article III Standing*

Federal courts may only hear actual "Cases" or "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Standing is an essential part of Article III's case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The doctrine of standing limits who may bring a matter before the federal courts for adjudication. *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1155 (10th Cir. 2006).  Constitutional standing exists if the plaintiff shows that (1) he or she has suffered an "injury in fact" that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1210-11 (10th Cir. 2006).  In this case, Midwest argues that plaintiff cannot satisfy the first element of injury-in-fact because Ms. Frank's declaration establishes that the inclusion of her credit card's expiration date on the receipt did not subject her to a heightened risk of fraud or identity theft because the receipt included only the last four digits of her card number.  Midwest's argument is flawed in two different respects.

First, Midwest's lack of standing argument erroneously presumes that plaintiff must establish that the alleged FACTA violation caused her to suffer some form of actual harm. It is well settled that a statute itself may create a legal right, the invasion of which causes an

injury sufficient to create standing. *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates [constitutional] standing, even though no injury would exist without the statute."); *Robey*, 434 F.3d at 1211. Here, FACTA conferred upon plaintiff the legal right to receive a point-of-sale receipt from Midwest with the expiration date on her credit card omitted. When Midwest's agent handed her a receipt that failed to omit the offending information, she suffered legally cognizable injury. Furthermore, FCRA confers upon her a private right of action by which her injury can be redressed by the court in the form of damages available for a willful violation under § 1681n(a)(1)(A), even in the absence of actual damages, as discussed below. Because Midwest's alleged actions invaded the legal rights statutorily conferred on plaintiff, then, she suffered an injury sufficient to create standing. Indeed, it appears that all district courts to have considered the issue of standing to challenge non-compliance with FACTA's truncation requirement have concluded that receiving a receipt that does not omit information proscribed by FACTA results in an injury sufficient to confer standing under Article III, even in the absence of actual monetary damages. *See, e.g.*, *Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226, 1229-30 (D. Nev. 2007); *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 759 (E.D. Pa. 2007) (receipt contained four digits of credit card account number and also the card's expiration date); *Ehrheart v. Lifetime Brands, Inc.*, 498 F. Supp. 2d 753, 755-56 (E.D. Pa. 2007). Joining what appears to be the unanimous view on this issue, this court finds that plaintiff has standing to bring her FACTA claim against Midwest.

The second fallacy in Midwest's argument is that the declaration submitted by plaintiff from Mr. Faith undermines Ms. Frank's declaration. Mr. Faith's affidavit states that the primary purpose of credit card expiration dates is fraud detection and prevention. He explains in detail how the expiration date serves to prevent fraud in card-not-present transactions. And, specifically, he explains how the expiration date is used in conjunction with the three-digit security code on the back of the card in the validation process. Ms. Frank's declaration seems to be premised on the erroneous assumption that furnishing a receipt containing information that FACTA requires to be omitted is problematic only if the receipt furnishes all of the information needed for a wrongdoer to commit fraud. Mr. Faith's more comprehensive declaration explains how the expiration date provides a piece of the puzzle that would assist a wrongdoer in committing fraud. Taken as true, this information establishes that plaintiff suffered a concrete and particularized injury when Midwest's agent handed her a receipt containing information prohibited by FACTA and, in doing so, increased the risk that she might become a victim of credit card fraud.

Midwest nonetheless contends that Congress's ability to create legal rights, the invasion of which creates standing, does not confer on Congress the ability to create Article III's requirements. In support of this argument, Midwest relies on a line of Supreme Court cases which is distinguishable because they involved citizen lawsuits raising generalized grievances challenging the legality of government action or inaction, and the very nature of those cases implicated different legal concerns about standing. *See generally, e.g.*, *Raines v. Byrd*, 521 U.S. 811 (1997) (individual members of Congress did not have standing to

11

challenge constitutionality of Line Item Veto Act); *Lujan*, 504 U.S. at 555 (environmental groups did not have standing to challenge regulation of the Secretary of the Interior); *American Forest & Paper Ass'n v. United States EPA*, 154 F.3d 1155 (10th Cir. 1998) (trade association lacked standing to challenge EPA's action).   In contrast, this lawsuit involves an incident where the plaintiff herself was an object of the defendant's action and, as such, "there is ordinarily little question that the action or inaction has caused him [or her] injury, and that a judgment preventing or requiring the action will redress it."  *Lujan*, 504 U.S. at 561-62.

        B.     *Availability of Statutory Damages*

In this lawsuit plaintiff is seeking statutory damages for defendant's allegedly willful violation of FCRA pursuant to 15 U.S.C. § 1681n(a)(1)(A).  This statute provides as follows:

> Any person who wilfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of --
>
>     (1)(A) any <u>actual damages</u> sustained by the consumer as a result of the failure **OR** <u>damages of not less than $100 and not more than $1,000</u>; or
>
>     (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
>
>     (2) such amount of punitive damages as the court may allow; and
>
>     (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

§ 1681n(a) (emphasis added).  The emphasized subsection provides for "actual damages" or "damages of not less than $100 and not more than $1,000."  The latter of the two alternatives provides for what is commonly known as statutory damages.  In this lawsuit, plaintiff is not

seeking actual damages, but rather statutory damages.  Midwest argues that the statutory damage provision should be read to provide only for damages to compensate actual injury without requiring proof of the extent of actual injury.

As in all statutory construction cases, the court begins with the language of the statute itself.  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).  The statutory language is also the stopping point if it is unambiguous and the statutory scheme is coherent and consistent.  *Id.*  Here, the statute provides for actual damages "or" statutory damages.  In light of the fact that the word "actual" damages is notably absent from the statutory damages provision, it is clear that a showing of actual damages is not required to recover statutory damages.  Moreover, the availability of statutory damages without a showing of actual damages provides for a coherent and consistent statutory scheme.  Section 1681n creates a private right of action for a willful violation of FCRA whereas § 1681o provides the private right of action for a violation that is merely negligent, as opposed to willful.  Significantly, the analogous provision of § 1681o permits only actual damages; it contains no counterpart to the statutory damage provision in § 1681n.  Thus, FCRA permits statutory damages in willful noncompliance cases, but not in negligent noncompliance cases.  In sum, the lack of ambiguity in the plain language of the statute as well as the coherency and consistency of the dichotomous statutory scheme reflects that a showing of actual damages is not required to recover the statutory damages permitted under § 1681n(a)(1)(A) in a willful noncompliance case.  *See, e.g.*, *Tremble v. Town & Country Credit Corp.*, Case No. 05-2625, 2006 WL 163140, at *3-*4 (N.D. Ill. Jan. 18, 2006) (rejecting defendant's argument that plaintiff was

required to prove actual damages in order to obtain statutory damages under § 1681n(a)(1)(A)); *Soualian v. Int'l Coffee & Tea LLC*, Case No. 07-502, 2007 WL 4877903, at *3 (C.D. Cal. May 22, 2007) (finding a similar argument raised by the defendant in that case was "grossly overreaching" because "the plain language of FCRA's damages provision defeats Defendant's argument that Plaintiff must prove actual harm to recover for Defendant's alleged violations of Section 1681c(g)"); *cf. Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 622 (7th Cir. 2007) (noting that FCRA contemplates possible awards of statutory damages for willful violations, and therefore actual damages are not a precondition to suit).

Midwest nonetheless argues that the plaintiff must be required to prove some actual damages because if the statute were to provide for damages where no injury exists, then its purpose would be punitive, thus making the punitive damages provided for in subsection (2) redundant.  The actual or statutory damages in subsection (a)(1), however, are in the nature of compensatory damages.  *See In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 341-42 (N.D. Ill. 2002); *see also Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (explaining that statutory damages allow for the recovery of modest damages that are likely small and difficult to quantify, without proof of actual injury).  Moreover, the statutory damages are capped at $1,000 per violation whereas the punitive damages permitted under subsection (a)(2) are presumably capped only by constitutional principles.  Thus, the statutory damage provision's lack of an actual damages requirement does not make the punitive damages provision redundant.

14

Midwest also contends that because Congress provided for statutory damages only for willful violations, the meaning of the term "willful" confirms the need for some injury to exist.  In support of this argument, Midwest cites to that portion of the Supreme Court's opinion in *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007), in which it stated that it is the "high risk of harm," objectively assessed, that is the essence of recklessness at common law.  *Id.* at 2215.  Relying on this citation, Midwest argues that "willfulness" requires an unjustifiable risk of "harm," thus indicating that Congress did not intend to provide for damages for a "willful" violation in the absence of any actual or risk of harm.  This argument rests on an isolated excerpt from *Safeco* and, consequently, on an overly narrow reading of the Supreme Court's holding in that case.  The Court in *Safeco* used the term "risk of harm" only in the context of analogizing "recklessness" in FACTA to the common law meaning of "recklessness" in tort law.  The significance of the Court's holding in *Safeco* was in reading the statutory language "willfully fails to comply" as reaching reckless FCRA violations and in rejecting the defendant insurance companies' argument that the use of the term "willfully" limits liability under § 1681n(a) to knowing violations.  *Id.* at 2210.  Thus, it is the reckless disregard of statutory duties (not harm) that makes a violation willful.  *Id.* at 2208 (referring to reckless disregard of the law as willful), 2215 (discussing reckless disregard in terms of "risk of violating the law").  Nowhere did the Court in *Safeco* suggest that the "risk of harm" standard from tort law is incorporated into the FCRA.  Accordingly, the court rejects Midwest's argument based on an isolated quotation from *Safeco* which has been taken out of context.

C.    *Due Process*

Midwest contends that the statutory damages provision is unconstitutional as applied in this case where (as here) plaintiff has suffered no actual injury, and therefore "*any*" damage award would be wholly disproportionate to the offense.  It is possible that statutory damages could violate due process if "the penalty prescribed is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 68, 67 (1919).  At this point, however, this concern is hypothetical, given that Midwest's allegation that plaintiff has suffered no actual damages does not make it so.  The summary judgment record establishes that the inclusion of plaintiff's credit card expiration date on the receipt placed her at an increased risk of being a victim of credit card fraud.  This is a loss, albeit one that is likely small and hard to quantify, which is why statutes such as FCRA provide for modest damages without proof of injury. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).  Midwest has not cited any authority to support the proposition that it is entitled to summary judgment at this early stage of the litigation where there is not yet any damage award for the court to review.  Thus, Midwest's due process argument is premature at this time.  For all of the reasons stated, then, Midwest's first motion for summary judgment is denied.

**II.    <u>Second Motion Based on Alleged Ambiguity of Statute</u>**

In Midwest's second motion, it argues that it cannot be held to have willfully violated an ambiguous statute when there exists a reading of the text of the statute that would permit Midwest's actions.  This argument is based on the Supreme Court's holding in *Safeco Ins.*

*Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007), in which the Supreme Court defined "willful" for purposes of FCRA's willful damages provision, § 1681n.  The dispute in *Safeco* concerned interpretation of a notice provision in FCRA that requires an insurance company to notify an affected consumer if the insurer takes any "adverse action" regarding the consumer "'that is based in whole or in part on any information contained in a consumer report.'"  *Safeco*, 127 S. Ct. at 2206 (quoting 15 U.S.C. § 1681m(a)).  The alleged violations involved initial rates charged for new insurance policies, and the issue presented was whether quoting or charging a first-time premium could constitute an "adverse action" which is defined as "'an increase in any charge for . . . any insurance, existing or applied for.'"  *Id.* at 2210 (quoting 15 U.S.C. § 1681a(k)(1)(B)(I)).  The district court had held that an initial rate offer does not involve an "increase" because that term is understood to mean a change in treatment for an insured.  *Id.* at 2210-11.  The Supreme Court disagreed, concluding that in light of the statute's purpose the term "increase" required for "adverse action" "speaks to a disadvantageous rate even with no prior dealing; the term reaches initial rates for new applicants."  *Id.* at 2211-12.  One of the defendants in *Safeco*, Safeco Insurance Company, did not give the plaintiffs notice because it thought § 1681m(a) did not apply to initial applications; consequently, Safeco's failure to give notice may have violated § 1681m(a) if certain other conditions (not necessary to the discussion here) had been satisfied.  Critically, however, the plaintiffs had brought suit pursuant to § 1681n(a), alleging a willful violation of § 1681m(a).  *Id.* at 2207.  The Court explained that "willful" as used in § 1681n(a) encompasses a knowing or reckless violation.  *Id.* at 2208-09.  And, the court concluded that Safeco could not be held liable for a willful

17

violation of FCRA based on its reading of the statute (i.e., that an "increase" in rate occurs only to an increase in an existing customers' rate, not to initial rates for new applicants).  The Court held that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 2215.  The Court noted that although it disagreed with Safeco, it recognized that Safeco's reading of § 1681m(a) had a "foundation in the statutory text." *Id.* at 2215-16.  Under those circumstances, Safeco's understanding of "the less-than-pellucid statutory text" was not objectively unreasonable and therefore fell "well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Id.* at 2216.

This case involves an alleged violation of a different FCRA provision than the one at issue in *Safeco*.  Whereas *Safeco* involved an alleged violation of § 1681m(a), this case involves an alleged violation of § 1681c(g) and, specifically, the inclusion of a credit card expiration date on a receipt given to the consumer at the point of sale.  Midwest seeks to analogize § 1681c(g) to § 1681m(a) by arguing that the statutory text of § 1681c(g) is also "less than pellucid" and a proposed interpretation that permits the inclusion of an expiration date on a receipt that omits all but the last four digits of the card's number has "a foundation in the statutory text."  The statute provides as follows:

> Except as otherwise provided in this subsection, no person that accepts credit
> cards or debit cards for the truncation of business shall print more than the last

> 5 digits of the card number or the expiration date upon any receipt provided to
> the cardholder at the point of the sale or transaction.

§ 1681c(g).  Midwest contends that an interpretation that rests on the most natural and common understanding of the word "or" would allow the statute's requirements to be met in one of three ways: (1) receipts that contain less than five digits of the card number but include expiration dates; (2) receipts that contain six or more card number digits but exclude expiration dates; or (3) receipts that truncate numbers and exclude expiration dates.

This case, however, is not like *Safeco* which involved an ambiguity in the meaning of the term "increase" in § 1681a(k)(1)(B)(I).  Here, the applicable statute—§ 1681c(g)—sets out its requirements in plain language and is not susceptible to conflicting interpretations, no matter how much Midwest would like it to be.  The plain meaning of the statute is that a merchant may print no more than the last five digits of the card number, nor may it print the card's expiration date on the receipt.  Midwest is grasping to find a plausible ambiguity in the statute which simply does not exist.  In doing so, it joins a host of other defendants in similar FACTA cases who have also argued for alternative meanings of the statute in an attempt to escape liability for failing to omit the required information from point-of-sale receipts.  And, like the courts in all of those other cases, this court flatly rejects Midwest's argument that the statute has any such alternative meaning.  *See, e.g.*, *Follman v. Village Squire, Inc.*, Case No. 07-3767, 2007 WL 4522614, at *4 (N.D. Ill. Dec. 18, 2007) (rejecting the defendant's argument that the statute is so vague and ambiguous so as to make a willful violation impossible; finding statute unambiguous); *Ramirez v. MGM Mirage, Inc.*, 524 F.

Supp. 2d 1226, 1233-35 (D. Nev. 2007) (same); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1209 (C.D. Cal. 2007) (same; distinguishing *Safeco* on the grounds that § 1681c(g) "is not ambiguous or susceptible of conflicting interpretations"); *Follman v. Hospitality Plus of Carpentersville, Inc.*, — F. Supp. 2d —, 2007 WL 3052962, at *2-*3 (N.D. Ill. Oct. 17, 2007) (publication forthcoming) (same; collecting case law); *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 760-61 (E.D. Pa. 2007) ("Every other court to consider the issue . . . has come to the conclusion that the statute is not vague or ambiguous and that it means a business cannot print 6+ digits or the expiration date."); *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 785-86 (N.D. Ill. 2007) (rejecting argument that statute is vague); *Lopez v. Gymboree Corp.*, Case No. 07-0087, 2007 WL 1690886, at *3 (N.D. Cal. June 9, 2007) (rejecting argument that statute is vague and ambiguous "because the plain language of this section has only one reasonable meaning"). In sum, the statute at issue in this case is readily distinguishable from the one at issue in *Safeco*. Here, there is no plausible alternative reading of the statute in the foundation of the statutory text and, as such, the statute itself does not provide a valid ground upon which Midwest can successfully avoid liability on the willfulness inquiry as a matter of law.

Lastly, Midwest also contends that the statute is so vague and ambiguous that it violates constitutional principles of due process. "The void-for-vagueness doctrine reflects the principle that a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Roberts v. U.S.*

*Jaycees*, 468 U.S. 609, 629 (1984).  Again, however, the statute is not vague at all.  In fact, it could not be more clear in requiring merchants to omit all but the last five digits of a card number as well as the expiration date.  *See, e.g.*, *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 785-86 (N.D. Ill. 2007) (rejecting argument that § 1681c(g) was unconstitutionally vague); *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 970-71 (C.D. Cal. 2007) (same).  Accordingly, Midwest's second motion for summary judgment is also denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Midwest Airlines' First Motion for Judgment on the Pleadings or, Alternatively, Summary Judgment (doc. #18) and Midwest Airlines' Second Motion for Judgment on the Pleadings or, Alternatively, Summary Judgment (doc. #20) are denied.

**IT IS FURTHER ORDERED** that Midwest's Motion for Partial Summary Judgment on the Pleadings or, Alternatively, Partial Summary Judgment Regarding Plaintiff's Claim for Injunctive Relief (doc. #22) and Plaintiffs' Motion to Stay Deadline for Plaintiff's Response to Defendant Midwest Airlines, Inc.'s Motion for Partial Summary Judgment (doc. #34) are denied as moot.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Order Permitting Oral Argument (doc. #53) is denied.

**IT IS SO ORDERED** this 12th day of March, 2008.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge